FREEMAN v. QUEBEDEAUX et al.

(Court of Civil Appeals of Texas. Austin. Nov. 20, 1912.)

CARRIERS (§ 123*)—INJURY TO FREIGHT— LOSS—PROXIMATE CAUSE.

Where defendant carrier improperly added a charge for icing to the expense bill of a car of cabbage, shipped by plaintiffs to G. for sale, but this error was not the cause of the consignee's refusal to accept the car and pay a draft attached to bill of lading, which caused a delay resulting in loss from the deterioration of the cabbage, defendant was not liable for such loss because of the addition of the icing charge.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 506, 507, 539–543; Dec. Dig. § 123.*]

Appeal from Travis County Court; R. E. White, Judge.

Action by W. Quebedeaux and others against T. J. Freeman, as receiver, etc. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Fisher & Fisher, of Austin, and Wilson & Dabney, of Houston, for appellant.

JENKINS, J. Appellees brought this suit to recover damages to a car load of cabbage, shipped from Austin, Tex., to St. Louis. The alleged cause of action was that said cabbage were shipped without being iced by appellant, and that when they reached St. Louis an expense bill was rendered to the consignee, including $55 for icing, and that by reason thereof the consignee refused to pay said charge and accept the cabbage, on account of which there was a delay of some eight days before the cabbage were delivered, in consequence of which it was greatly damaged. The case was tried before the court without a jury, and the court rendered judgment for appellees for $236.42.

Appellees shipped said cabbage "to shipper's order," with instructions to deliver them to L. Garvy & Co., wholesale produce dealers in St. Louis, and at the same time drew on said Garvy & Co. against said cabbage at the rate of $1.25 per hundred. Garvy & Co. refused to pay the draft and expense bill, by reason of which the railroad company refused to deliver the cabbage. Appellees drew this draft on the supposition that they had an agreement with Garvy & Co. to pay that amount for the cabbage and sell them for the joint account of said Garvy & Co. and appellees upon the division of the amount realized for said cabbage, over and above said $1.25 per hundred and the freight. Appellees' theory was based upon the following telegram: "Austin, January 6th, 1909. L. Garvy & Co. St. Louis, Mo. How is the cabbage market? Car of bulk cabbage ready on Saturday. Would you advance $1.25, handled joint account. [Signed] W. Quebedeaux & Son." To which they received the following reply on the same day: "New cabbage from $40 to $45 a ton here; advise shipping. [Signed] L. Garvy Produce Company." On January 13th, appellees received the following telegram: "Car cabbage here; freight and ice charges $163. Cannot pay draft. Cabbage worth $40 ton here. Release bill of lading and will sell the best advantage. [Signed] L. Garvy & Co." To which appellees on the same day replied as follows: "Understand from your telegram you will advance $1.24. Take care of our draft; if any loss draw on us." To this Garvy & Co. on same day replied: "Wired you cabbage worth $40 to $45. Didn't buy; will not protect draft." On the same day Garvy & Co. wrote appellees that they did not buy the cabbage and that they would not pay the draft; in reply to which, on January 15th, appellees wrote Garvy & Co. as follows: "We have your favor 13th, and note contents. We knew you did not buy the car of cabbage, and while you did not say so in so many words that you would advance $1.25, your telegram led us to think you would do so, and your letter confirms the impression that you intended to do so until you were advised that there was an icing charge. There should not be an icing charge, so we wired you to pay the draft and draw back on us for $50, and now will ask you to attach expense bill if you have not already drawn, and if so, we will pay the draft, etc." On the same day appellees wrote Garvy & Co. another letter, as follows: "Both your letter and wire indicated that you would advance $1.25 per hundred pounds on car of cabbage, and the only excuse you offer is that you did not think there would be any icing charges, and there should not have been. We feel that we have been badly treated in the matter, and whatever loss we may sustain we will place in the hands of our attorney, with instructions to make claim on the railroad company and yourselves for it." Garvy & Co. were not made parties to this suit.

On January 18th, appellees sent the following telegram to Haueisen Bros., wholesale produce dealers at St. Louis: "This will be authority agent Iron Mountain deliver car without bill of lading." In the meantime the railroad company had admitted that the charge for icing was error. Haueisen Bros. disposed of the cabbage at from $20 to $30 per ton.

L. Garvy, of the firm of Garvy & Co., testified by deposition as follows: "I did not buy the cabbage involved in this suit in the first place. I had some correspondence with Quebedeaux & Co., and they shipped this car and notified me, and when it came here I was surprised because I did not buy it. I said I would handle it for their account, because cabbage was in damaged condition. Immediately upon being notified, I examined the car and found the cabbage in a damaged condition, and therefore I sent telegram to

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Quebedeaux & Co. under date of January 15, 1909, which read as follows: 'Didn't buy cabbage, won't pay draft. Release bill of lading; handle for your account only.' My firm did not accept cabbage upon arrival in St. Louis; declined because I did not buy it. The reason I declined the car was not because expense bill called for icing charges, which made the total bill $163.20 instead of $108, as I did not get the expense bill until after the car had been examined and found to be defective."

There is no evidence in the record to contradict this statement of Garvy that he did not refuse the shipment on account of the erroneous icing charge. Under the undisputed evidence, appellees' cause of action is not sustained, for which reason the judgment of the trial court is reversed, and judgment here rendered in favor of appellant.

Reversed and rendered.